IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 21, 2019

## STATE OF TENNESSEE v. MANOOCHEHRE LEE DADFAR

**Appeal from the Circuit Court for Lincoln County**
**No. 13-CR-138    Forest A. Durard, Jr., Judge**

_____

### No. M2018-01547-CCA-R3-CD

_____

The Defendant, Manoochehre Lee Dadfar, appeals the Lincoln County Circuit Court's order revoking his probation for his convictions for initiating the manufacture of methamphetamine and possession with the intent to sell a controlled substance and ordering him to serve the remainder of his effective ten-year sentence in confinement. The Defendant contends that the trial court abused its discretion by revoking his probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and JOHN EVERETT WILLIAMS, P.J., joined.

Manuel B. Russ (on appeal), Nashville, Tennessee, and Manoochehre Lee Dadfar (at revocation hearing), Pro Se, Hartsville, Tennessee.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber Sandoval and Ann Filer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On May 20, 2014, the Defendant pleaded guilty and received concurrent ten-year sentences to be served on community corrections. On May 17, 2016, a community corrections violation warrant was issued, after the Defendant's community corrections officer alleged that he had failed to report. On December 15, 2016, the Defendant filed a pro se "Motion for Probation Hearing," in which he stated that he was confined in an Alabama jail for drug charges unrelated to the convictions in this case and that Lincoln County had issued a detainer warrant relative to a community corrections violation in this case. The motion requested that the trial court "waive the detainer" and "run his remaining sentence to"

a substance abuse treatment program in Alabama. The motion also requested that the court "quash" his fines, fees, and court costs. On December 20, 2016, the trial court denied the Defendant's motion to quash his fines, fees, and court costs.

On January 5, 2017, an amended community corrections violation warrant was issued on the grounds that the Defendant had been arrested on December 9, 2016, in Alabama for possession of a controlled substance, possession of drug paraphernalia, theft, disorderly conduct, and resisting arrest and had been arrested on September 4, 2016, in Alabama for domestic violence assault. The trial court's written order revoking the Defendant's community corrections sentence reflects, without specificity, that the Defendant admitted he had violated the terms of his release and "agreed to the resolution set out on the Defendant's re-sentencing judgment." The January 5, 2017 "Re-Sentencing Judgment" reflects that the court resentenced the Defendant to twelve years to be served on community corrections for initiating the manufacture of methamphetamine. A "Re-Sentencing Judgment" regarding the possession with the intent to sell a controlled substance conviction is not contained in the record. On July 13, 2017, the Defendant's supervision was transferred from community corrections to probation until the expiration of his sentence.

On April 17, 2018, a probation violation report was filed with the trial court, alleging that the Defendant had absconded from supervision, that his whereabouts were unknown, that he had last reported to his probation officer in December 2017, and that he had failed to make a payment toward fines, fees, and court costs since February 5, 2016. On April 17, 2018, a probation violation arrest warrant was issued. On June 5, 2018, another probation violation report was filed with the court, alleging that the Defendant had moved without permission, that he had left his last known employer in January 2018, that he had not paid toward fines, fees, and court costs since February 2016, that he had been convicted in Alabama of possession with the intent to distribute a controlled substance on May 10, 2018, and that he had been arrested in Alabama for unlawful possession of a controlled substance on April 3, 2018. On June 5, 2018, a probation violation arrest warrant was issued.

During his opening statement at the revocation hearing, the pro se Defendant told the trial court that he was guilty of failing to report because of extenuating circumstances and that he did "take . . . multiple convictions since [his] last violation," which had been pending before his 2017 community corrections revocation hearing.

A certified copy of a Madison County, Alabama, "Plea, Adjudication, and Sentencing Order" was received as an exhibit and showed that on May 10, 2018, the Defendant pleaded guilty to possession with the intent to distribute a controlled substance and received a sentence of twenty-four months' probation after serving twenty-four months in confinement. The record reflects that the offense date was December 1, 2016. A certified copy of a Huntsville, Alabama, warrant was received as an exhibit and showed that on June 14, 2017,

the Defendant was convicted of domestic violence assault and received a sentence of sixty days' confinement. The record reflects that the arrest date was September 4, 2016.

Probation Officer Barbara Dattulo testified that after the Defendant stopped reporting to her office, she learned that he had been convicted in Alabama of possession with the intent to distribute and domestic violence assault. She said that if the Defendant had reported to her office, she could have addressed his substance abuse and assisted him with admission into a rehabilitation program. She agreed an Alabama detainer warrant had been issued relative to an Alabama probation violation.

On cross-examination, Ms. Dattulo testified that she first met the Defendant when the trial court transferred him from community corrections to probation. She stated that the Defendant owed $2,180.50, although she did not know the individual amounts of the fines, fees, and court costs. She said that the money owed would have been part of his transfer to the Alabama probation office. On redirect examination, Ms. Dattulo recommended, based upon previous revocations, that the court revoke the Defendant's probation and order him to serve his sentence.

Upon examination by the trial court, Ms. Dattulo testified that the Defendant had not reported to her office since December 2017 and that the initial probation violation warrant was issued in April 2018. She agreed that she later filed an amended probation violation report.

Community Corrections Officer Vicky Davenport testified for the defense that she was the Defendant's community corrections officer. She said that at the time of the 2017 community corrections violation, which had been based upon the Defendant's failure to report to her office, the Defendant had been paying $100 per month toward court costs. She said that the Defendant did not have community service hours to complete. She said that the first community corrections violation warrant was issued in May 2016 and that the violation was based upon the Defendant's failure to report. She said that she amended the community corrections violation allegations in January 2017 as a result of the 2016 Alabama charges, which were pending at the time she amended her probation violation report. She said that, on December 9, 2016, the Defendant was charged with possession of a controlled substance, theft, disorderly conduct, possession of drug paraphernalia, and resisting arrest. She said she learned the Defendant had also been arrested for domestic violence on September 4, 2016. She said that on January 5, 2016, the Defendant was resentenced by the trial court to twelve years to be served on community corrections after six months' confinement. She said that after his term of confinement, the Defendant began reporting to her office until the court transferred him to probation.

Ms. Davenport testified that until the Defendant absconded from supervision, he reported regularly, made on-time payments, and performed community service. She agreed the Defendant performed well on community corrections after the previous violation proceedings were resolved. She said that he was transferred from community corrections to probation on July 13, 2017. She recalled that the Defendant began reporting to an Alabama probation officer.

The Defendant testified that on September 4, 2016, he was arrested for domestic violence, that on June 12, 2017, he was "rearrested" on the domestic violence charge, and that on June 14, 2017, he pleaded guilty in exchange for a sixty-day sentence to be served concurrently with his "last revocation." He stated that the Alabama conviction for possession with the intent to distribute a controlled substance had an offense date of December 1, 2016, and that the conviction date for this offense was May 10, 2016. He stated that the Alabama convictions for which the State was currently seeking revocation of his probation occurred before the 2017 community corrections revocation proceedings.

The Defendant testified that he had two jobs. He said that he worked for Charlie Trinka, who owned multiple properties in Madison County, and that he renovated and repaired Mr. Trinka's properties. The Defendant said that he moved from property to property based upon the repairs he was completing. The Defendant said that he also worked for ADEPT Technologies and that his previous attorney had documentation of this employment.

The Defendant testified that he had three sons, one daughter, and one grandchild and that he cared for his mother whose health was poor. He asked the trial court for a second chance after he admitted that he did not report to his probation officer. He said that his failure to report was based upon his caring for his mother, "getting back into" his children's lives, and the death of his grandfather and that he "messed up" when he stopped reporting.

Charlie Trinka testified for the defense that he owned fifty-two properties and that the Defendant worked for him. Mr. Trinka said that he and the Defendant "made a deal" in which the Defendant performed maintenance at the various properties in exchange for a place to live. Mr. Trinka said the Defendant performed repair work, cleaned, and had responsibility for the general upkeep at the properties. Mr. Trinka said that he also cashed the Defendant's payroll checks from ADEPT Technologies because the Defendant did not have proper identification, that a small amount of the paycheck was applied toward the cost of the Defendant's utility expenses, and that he gave the Defendant the remainder. Mr. Trinka said, generally, the Defendant had personal items at two properties. Mr. Trinka stated that the Defendant could continue his employment if he were released from jail. Mr. Trinka said that he would provide the Defendant with a property at which to work and provide the Defendant with a list of tasks to complete at the property.

On cross-examination, Mr. Trinka testified that the Defendant had worked for him since "before he got out of jail the first time," which he estimated had been between eighteen months and three years. Mr. Trinka said that he and the Defendant did not discuss the Defendant's responsibilities associated with caring for the Defendant's mother.

Linda Holley, the Defendant's mother, testified that her income was from her disability benefits and that the Defendant managed her checking account. She said that she no longer drove her vehicle because she had a high risk for having a heart attack and a stroke and that she had memory "problems."

On cross-examination, Mrs. Holley testified that Mr. Trinka drove her to the courthouse. She said that sometimes the Defendant arranged for someone to be her driver and that the Defendant had cared for her during the previous three years.

On rebuttal, Ms. Dattulo was recalled by the State and testified that none of the information presented by the Defendant regarding employment and living arrangements had been reported to the probation office. On cross-examination, Ms. Dattulo stated that the Defendant had been inside her office once but that she did not meet personally with the Defendant. She said that the Alabama probation office forwarded all of its information related to the Defendant to her office.

The trial court reviewed the procedural history and found that the Defendant pleaded guilty on May 20, 2014 and received a ten-year sentence to be served on community corrections. The court found that the first community corrections violation warrant was filed on May 17, 2016, based upon the Defendant's failure to report to his community corrections officer for approximately three months. The court found that the warrant was amended on January 5, 2017, to include an Alabama arrest on December 19, 2016, for theft, disorderly conduct, possession of drug paraphernalia, and resisting arrest. The court found that the amended warrant also alleged the Defendant had been arrested in Alabama for domestic violence assault on September 4, 2016. The court found that on January 5, 2017, the Defendant and the State entered into a "negotiated settlement," in which the Defendant's community corrections sentence was revoked, his sentence was increased to twelve years, and he was returned to community corrections after serving six months' confinement. The court found that on April 17, 2018, a probation violation warrant was filed based upon the Defendant's failure to report to his probation officer, to pay fines, fees, and court costs, and moving without notifying his supervising officer. The court found that the warrant was amended to include the Defendant's May 10, 2018 Alabama conviction for possession with the intent to distribute a controlled substance and the Defendant's April 3, 2018 Alabama arrest for unlawful possession of a controlled substance.

The trial court declined to consider the domestic violence assault charge as a basis for revoking the Defendant's probation because the charge was included in the "warrant the first time." The court found that that it was "striking" that the present violation was his second for failing to report to his supervising officer. The court found that the Defendant admitted he failed to report, that the Defendant had a history of failing to report, and that the Defendant had been unable to complete multiple alternative sentences in two states.

The trial court found that although the Defendant's Alabama arrest for possession with the intent to distribute a controlled substance occurred before the violation warrant was issued and the arrest was not used as a basis to revoke his community corrections sentence in 2017, the conviction for this offense occurred after the previous violation was resolved. The court determined that the State was not prohibited from seeking revocation based upon the conviction. The court stated that if it had known of the serious drug-related charge during the community corrections revocation proceedings, it would not have accepted the negotiated settlement. The court stated that although it did not look favorably upon the State's withholding charges only to use them as basis for revocation at a later date, no evidence showed the State knew about the arrest at the time of the previous revocation proceedings.

The trial court determined that the Defendant violated the conditions of his release. The court stated that although the Defendant's attitude had improved since 2013, he continued to violate the conditions of his release. The court found that the Defendant was required to maintain contact with his supervising officer and that the court had no choice but to order the Defendant to serve the remainder of his sentence. This appeal followed.

The Defendant contends that the evidence is insufficient to support the trial court's revoking his probation and that the court abused its discretion by ordering him to serve his sentence in confinement. The State responds that the trial court did not err by revoking the Defendant's probation and ordering his sentence into execution. We agree with the State.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a

period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c) (2014), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 378 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that the State sought revocation of the Defendant's probation, in relevant part, based upon his failure to report to his probation officer. The Defendant testified that he failed to report to his probation officer and conceded that his failure to report violated the conditions of his release. Although he attempted to present mitigation evidence of his familial responsibilities, he nonetheless admitted to violating his probation. As a result, the record supports the trial court's finding that the Defendant violated the conditions of his probation.

Because we have concluded that the record supports the trial court's finding that the Defendant violated the conditions of his probation, we likewise conclude that the court did not abuse its discretion by revoking the Defendant's probation. *See* T.C.A. § 40-35-311(e)(1). Once the court revoked the Defendant's probation, it had the authority to order the Defendant to serve the remainder of his sentence in confinement. *See id*. §§ 40-35-308(a), (c), -310. The Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE